UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARY CARTER                                                                                     PLAINTIFF

V.                                                     CIVIL ACTION NO. 3:22-CV-712-KHJ-MTP

CITY OF JACKSON, MISSISSIPPI                                    DEFENDANT

ORDER

Before the Court are Defendant the City of Jackson's [49] Motion in Limine, Plaintiff Mary Carter's [50] Motion in Limine, and the City's [54] Motion to Admit Evidence Related to Job Performance. The Court grants in part and denies in part each motion.

I.     Standard

The purpose of a motion in limine is to preclude opposing counsel from "mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *Parker v. Tyson Foods, Inc.*, 499 F. Supp. 3d 297, 299 (S.D. Miss. 2020) (quoting *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977)). "Evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds." *White v. Dolgencorp, LLC*, No. 3:21-CV-738, 2023 WL 2703612, at *1 (S.D. Miss. Mar. 29, 2023) (quotation omitted). "Accordingly, evidentiary rulings addressing broad classes of evidence should often

be deferred until trial so that questions of foundation, relevancy, and potential prejudice can be resolved in proper context." *Id.* (cleaned up).

"An order granting a motion in limine does not preclude the losing party from revisiting the issue at trial, outside the jury's presence." *United States v. Bryan*, No. 3:21-CR-17, 2023 WL 8100552, at *1 (S.D. Miss. Nov. 21, 2023).

II. Analysis

The Court starts with the City's [49] Motion in Limine. It then turns to Carter's [50] Motion in Limine. Finally, it addresses the City's [54] Motion to Admit Evidence Related to Job Performance.

    A.  The City's [49] Motion in Limine

The City moves to exclude five categories of evidence and arguments: (1) disparaging comments about Marlin King; (2) photographs and allegations of sleeping on the job; (3) allegations concerning failures of the Jackson water system; (4) allegations concerning race or age discrimination; and (5) any reference to punitive damages, the need to punish the City, or the need to send a message. [49] at 1–6. The Court addresses each category in turn.

        1.  Disparaging Comments About Marlin King

The Court denies the City's request to exclude all "[d]isparaging comments about Marlin King." [49] at 2–3.

The City argues that all such comments are inadmissible under Rules 402 and 403. *See id.* According to the City, "[i]t is irrelevant whether Mr. King refused

to communicate with others, missed certain meetings, or was incompetent at his job." *Id.* at 3.

The Court rejects the City's request for a blanket ruling. King will testify about what the City deems the "true reason why Plaintiff was terminated": that "Plaintiff was a workplace bully who caused employees to resign and deterred qualified employees from coming back." City's Resp. [52] at 1–2. Against that backdrop, some purportedly "disparaging" comments about King may be highly probative. To take one example, "King recommended to terminate Plaintiff one day after she called him out for missing yet another meeting with the EPA and MSDH that unearthed recent operational issues with the City of Jackson's water treatment operations." Carter's Resp. [53] at 7. As the Court has already explained, "[a] reasonable jury could consider whether Carter's June 20 email motivated King's June 21 recommendation to fire her." Order [42] at 21 n.9 (noting that Carter copied senior officials on emails about King's failure to attend meetings and respond to requests for an additional operator). The Court therefore denies the City's request to exclude all "[d]isparaging comments about Marlin King." [49] at 2–3.

The Court cautions that this case is about retaliation, not a referendum on King's tenure as Public Works Director. Comments about King's performance must have sufficient probative value as to the ultimate issues in this case. *See* Fed. R. Evid. 401–03. The Court will resolve any specific objections at trial "in proper context." *White*, 2023 WL 2703612, at *1 (quotation omitted).

2. Photographs and Allegations of Sleeping on the Job

The City next moves to exclude a photograph of King (and another employee) sleeping during a meeting with the EPA and MSDH. *See* [49] at 3–4; [53] at 9–10. The City also moves to exclude all "allegations of sleeping on the job." [49] at 3.

The Court declines to exclude the photograph under Rule 403. "The exclusion of evidence under Rule 403 should occur only sparingly." *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993). "Rule 403's 'major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 369 (5th Cir. 2008) (quotation omitted). The City has failed to demonstrate that the "extraordinary measure" of exclusion is appropriate here. *United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996). The photograph has significant probative value. Among other things, it (1) provides "context as to why Carter continued to email King to address the staffing shortage"; (2) illustrates the bar to remain employed with the Public Works Department; and (3) bears on the City's difficulty in recruiting and retaining employees to work, in the City's words, "grueling hours." *See* [49] at 3; [52] at 1–2; [53] at 9.[1] And the City does not explain why any prejudice to the City would be "unfair." *See* Fed. R. Evid. 403; *Pace*, 10 F.3d at 1115–16 ("Relevant evidence is inherently prejudicial; but it is only *unfair*

---

[1] It is unclear from the record whether Carter ever confronted King about the photograph or showed it to others. If so, the photograph would be highly probative as to the central issue in this case: the "true reason" for wanting to fire Carter. *See* [52] at 1. That uncertainty reinforces the Court's conclusion not to exclude the photograph. *White*, 2023 WL 2703612, at *1 ("Evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds.") (quotation omitted).

prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403.") (quotation omitted). The Court thus denies this aspect of the City's motion.

The Court also declines to exclude all "allegations of sleeping on the job." [49] at 3. Again, "evidentiary rulings addressing broad classes of evidence should often be deferred until trial so that questions of foundation, relevancy, and potential prejudice can be resolved in proper context." *White*, 2023 WL 2703612, at *1 (cleaned up). Just so here. Some allegations of sleeping on the job could be admissible. For instance, if Carter confronted King about his sleeping during meetings with the EPA or told others about it, that would be probative of King's "true reason" for wanting to fire Carter. *See* [52] at 1. The Court denies the City's request for a blanket exclusion.

    3.  Allegations Concerning Failures of the Jackson Water System

The Court denies the City's request to exclude all "evidence concerning failures of the City water system," "if any." [49] at 4. This case involves a "staffing shortage [that] threatened to shut down water treatment plants," a media interview on the verge of the Jackson water crisis, and a termination during the Jackson water crisis. *See, e.g.*, City's Summ. J. Mem. [29] at 2, 14 (quotation marks omitted) ("[T]he City of Jackson was enduring a water crisis during the time relevant to Plaintiff's Complaint."). "[E]vidence concerning failures of the City water system" is not "clearly inadmissible on all potential grounds." [49] at 4; *White*, 2023 WL

5

2703612, at *1 (quotation omitted). The Court denies this aspect of the City's motion.

The Court cautions that Carter may not "put the City's water system on trial." [49] at 4. The City may raise objections to evidence that unduly risks confusing the issues in this First Amendment retaliation case. *See* Fed. R. Evid. 403.

4. Allegations Concerning Race or Age Discrimination

The parties agree that "allegations concerning race or age discrimination are inadmissible" and "not relevant." [53] at 12; *see also* [49] at 4–5. The Court grants this aspect of the City's motion as unopposed.

5. References to Punitive Damages, the Need to Punish the City, or the Need to Send a Message

The parties agree that "any statements referring to punitive damages should be excluded." [53] at 13. And by failing to argue otherwise, *see id.*, Carter tacitly admits that she may "not introduce any testimony or make any comments related to a need to punish [or] send a message." [49] at 6 (citing Fed. R. Evid. 402–03). The Court grants this aspect of the City's motion as unopposed.

B. Carter's [50] Motion in Limine

Carter moves to exclude three categories of evidence: (1) King's intent-to-terminate letters and any mention thereof; (2) King's resignation letter addressed to "[a]nyone truly seeking answers" and any mention thereof; and (3) Jenesia Miller's resignation letter and any mention thereof. [50] at 1–3; [51] at 6–11. The Court addresses each category in turn.

1. King's Intent-to-Terminate Letters

The Court denies Carter's request to exclude the intent-to-terminate letters. [50] at 1–2. Carter offers various objections, but all fail:

- The letters are relevant to the reason for Carter's termination. Each letter easily clears the "low bar for relevance." *Novick v. Shipcom Wireless, Inc.*, 946 F.3d 735, 741 (5th Cir. 2020). Carter's arguments otherwise go to weight, not admissibility. *See* Carter's Mem. [51] at 4–5.
- As to Rule 403, intent-to-terminate letters predating Carter's interview are highly probative of the central issue in this case: the reason for Carter's termination. And Carter does not explain why any prejudice to her would be "unfair." Fed. R. Evid. 403; *Pace*, 10 F.3d at 1115–16 ("Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403.") (quotation omitted).
- Carter's authentication arguments are issues for trial. *See* [51] at 6; *see also* [52] at 3 ("The City anticipates that Mr. King will authenticate the letter.").
- As to hearsay, a portion of the intent-to-terminate letters is admissible under Rule 803(3). *See* Fed. R. Evid. 803(3) (allowing for "statement of the declarant's then-existing state of mind[,] such as . . . intent"). And the remainder of the letters is admissible for a non-hearsay purpose. The evidence shows that the Mayor, who had ultimate termination authority, was on notice about King's alleged difficulties with Carter—whether those allegations were true or untrue. *See United States v. Cent. Gulf Lines, Inc.*, 747 F.2d 315, 319 (5th Cir. 1984) ("Evidence introduced to prove merely that notice was given is not offered to prove the truth of the matter asserted therein and, therefore, is not hearsay."); [53] at 6 (Carter noting that "intent to terminate letters . . . [were] addressed to Mayor Lumumba"); 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6719 (2024 ed.) ("Perhaps the most straightforward illustration of the effect-on-the-listener, non-hearsay purpose for offering an out-of-court statement is to show notice.").[2]

The Court therefore denies this aspect of Carter's motion.

---

[2] Upon request, the Court will issue a limiting instruction that the jury may not consider certain statements in the letters for the truth of the matter asserted. *See* Fed. R. Evid. 105. *But see* Fed. R. Evid. 803(3) (allowing City to introduce "intent" evidence for the truth of the matter asserted).

7

For the same reasons, the Court denies Carter's request to exclude any mention of those two letters. [50] at 1–2. Again, upon request, the Court will issue an appropriate limiting instruction. *See* Fed. R. Evid. 105.

    2.  King's Resignation Letter

Carter next moves to exclude King's letter addressed to "[a]nyone truly seeking answers," which he included in his "resignation packet." [50] at 2–3; [51] at 6–11; [54-2].

The Court excludes the letter itself as inadmissible hearsay. *See* [51] at 9; *see also* Carter's Resp. to Mot. to Admit [55] at 3. The City notes that King's letter "documents in detail numerous reasons why Ms. Carter was a problem employee that required termination." [52] at 2. That is, the City intends to use detailed, written out-of-court assertions to prove the truth of the matter asserted. None of Rule 803's exceptions apply. And because King's September 14 letter post-dated Carter's September 9 termination, the City may not use the letter for a non-hearsay purpose like notice. *See* [54-1]; [54-2]; [1-10]. King's letter itself is inadmissible hearsay. The Court grants this aspect of Carter's motion.

But King may offer live oral testimony "consistent with the letter," so long as he does not reference the written assertions within the letter. *See* [52] at 3. For example, King *may* testify that Carter held up a hiring approval process; he *may not* testify that he wrote in his letter that Carter did so. Although Carter seeks to exclude testimony about the incidents in the letter, her arguments fail:

- The evidence in the letter is relevant to the reason for Carter's termination. Carter's arguments otherwise go to weight, not admissibility. *See* [51] at 8–10.

- As to Rule 403, the evidence in the letter is highly probative of the central issue in this case: the reason for Carter's termination. And Carter does not explain why any prejudice to her would be "unfair." Fed. R. Evid. 403; *see also Pace*, 10 F.3d at 1115–16.
- King may offer live testimony consistent with the hearsay rule. To that end, the Court addresses potential hearsay issues relevant to the incidents described in the letter:
    - King may testify that a former employee stated that she resigned because of Carter. [54-2] at 1–2. That allegation is admissible for its effect on the listener: King. The Court will issue an appropriate limiting instruction upon request. *See* Fed. R. Evid. 105.
    - King may testify that Carter held up the approval process for the Executive Office Coordinator role. [54-2] at 2. Carter's statements are non-hearsay under Rule 801(d)(2).
    - King may testify that he "asked" Carter to meet with the City's Training Coordinator about staffing, but Carter was the only employee unwilling to do so. [54-2] at 2. King's request was not a "statement" under the hearsay rule. *See* 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6568 (2d ed. 2024).
    - King may testify that Carter refused to assist with the sanitary sewer overflow issue. [54-2] at 2. Carter's statements are non-hearsay under Rule 801(d)(2).
    - King may testify that Carter did not respond to employees' repeated "requests" for outstanding invoices. [54-2] at 3. As above, those requests were not "statements" within the meaning of the hearsay rule. *See* 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6568 (2d ed. 2024).
    - King may testify that he recommended terminating Carter, but his superiors told him to hold off. [54-2] at 3. The allegation about King's recommendation is admissible for its effect on the listener. Upon request, the Court will issue an appropriate limiting instruction. *See* Fed. R. Evid. 105. The allegation that superiors told King to hold off is admissible under Rule 803(3) to show their "then-existing state of mind."

At bottom, while the letter itself is inadmissible, King may offer live testimony "consistent with the letter." *See* [52] at 3. The Court denies this aspect of Carter's motion. Carter may raise contemporaneous objections at trial.

Finally, the Court denies Carter's request to exclude any mention of King's letter. [50] at 2–3. That request is overbroad. Although King may not reference the

9

written assertions within the letter, the Court cannot say that *any* reference to the letter would be "clearly inadmissible on all potential grounds." *White*, 2023 WL 2703612, at *1 (quotation omitted). The Court thus denies this aspect of Carter's motion. Carter may raise contemporaneous objections at trial.

   3. Miller's Resignation Letter

Finally, Carter moves to exclude Miller's resignation letter and any mention thereof. [50] at 3.

The Court denies Carter's request to exclude the letter. Carter offers various objections, but all fail:

- The letter is relevant to the reason for Carter's termination. Carter's arguments otherwise go to weight, not admissibility. *See* [51] at 11–13.
- As to Rule 403, the letter is highly probative of the central issue in this case: the reason for Carter's termination. And Carter does not explain why any prejudice to her would be "unfair." Fed. R. Evid. 403; *see also Pace*, 10 F.3d at 1115–16. To the contrary, Carter's motion stated that it was a "logical conclusion" for Miller to blame Carter. [50] at 3. Of course, Carter may cross-examine Miller about other potential factors contributing to Miller's "working stress," which will mitigate any prejudice to Carter. [51] at 12; *see also* Miller's Letter [28-2] at 1 (noting that employees were "stretch[ed] . . . too thin" and that her own position had been vacant "for almost 2 years").
- Carter's authentication argument is an issue for trial. [51] at 12; *see also* [52] at 3 ("The City expects that Ms. Miller will be able to identify the document and authenticate the document.").
- As to hearsay, the letter is admissible for a non-hearsay purpose: its effect on the listener. The evidence shows that King was on notice of employees' alleged difficulties with Carter—whether those allegations were true or untrue. *See Cent. Gulf Lines*, 747 F.2d at 319; 30B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6719 (2024 ed.); [28-2] at 1 ("CC: Marlin King").[3]

The Court therefore denies this aspect of Carter's motion.

---

[3] Upon request, the Court will issue an appropriate limiting instruction. *See* Fed. R. Evid. 105.

For the same reasons, the Court denies Carter's request to exclude any mention of Miller's letter. [50] at 3. Again, upon request, the Court will issue an appropriate limiting instruction. *See* Fed. R. Evid. 105.

C. City's [54] Motion to Admit Evidence Related to Job Performance

The City's (largely duplicative) motion seeks to admit King's resignation letter addressed to "[a]nyone truly seeking answers," as well as King's two intent-to-terminate letters. *See* [54] at 2. It also seeks to admit King's resignation letter addressed to Mayor Lumumba. *See id.*; [54-1] at 1.

As above, the Court excludes King's resignation letter addressed to "[a]nyone truly seeking answers" as inadmissible hearsay. *Supra* p. 8. King may, however, offer live oral testimony "consistent with the letter." *See id.* at 8–9.

The Court admits the two intent-to-terminate letters. *Id.* at 7.

The Court denies the City's request to admit King's resignation letter addressed to Mayor Lumumba. *See* [54] at 2; [54-1] at 1. The City argues that the letter is relevant only because it "attaches" King's resignation letter addressed to "[a]nyone truly seeking answers." [54] at 2. But the Court has excluded the latter as hearsay. *Supra* p. 8. The Court thus denies this aspect of the City's motion.

III.  Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS IN PART and DENIES IN PART Defendant the City of Jackson's [49] Motion in Limine; Plaintiff

11

Mary Carter's [50] Motion in Limine; and the City's [54] Motion to Admit Evidence Related to Job Performance.

**The parties shall inform their witnesses of the Court's in limine rulings so as to not violate the Court's Order.**

SO ORDERED, this 7th day of June, 2024.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE